Case number 15-3604, Scott Hutchison v. John Parent, Case number 16-4194, Scott Hutchison v. John Parent, and Case number 18-3305, Scott Hutchison v. John Parent, or arguments not to exceed 15 minutes per side, Mr. Michael Keith-Robertson for the Appellant Cross Appellee. Good morning, Your Honors. May it please the Court, Michael Robertson on behalf of John R. Parent, the Appellant and Cross Appellee in this case. I'd like to reserve four minutes of time for rebuttal and to address any issues on cross appeal as well. When a business relationship breaks up, parties in Ohio are required to litigate the causes of that breakup in one action. If they choose to bring another action, or if they do not bring them within that first action, they are barred from relitigating under Ohio's Rule 13a and res judicata. Now, the parties we have brought, I'll submit six different claims. However, there's really only one issue that needs to be addressed. The purpose behind that rule is what? on behalf of the parties in the court. And it could lead to, down the road, inconsistent verdicts and findings by juries. And I think that absolutely happened in this case. Now, in addressing this res judicata Rule 13 issue, there's really only two points that I'd like to get across to the Court. And those are, one, the interplay between Rule 13 and Rule 41. And I think that's what really caused some confusion with the District Court and the District Court Summary Judgment Memorandum of Opinion. And then, two, once we actually kind of figure out what the proper standard is to look at under Rule 13, and we apply that to this case, Ohio law is clear that when parties seek the accounting of the various rights, liabilities, and obligations they have towards one another in a business arrangement, and they want to get all that out on the table, those have to be addressed in one case. So going back to my first point on Rule 41 and Rule 13 and kind of what happened here. Rule 41 goes to the ability for claims to be independently adjudicated. Now, independently adjudicated goes purely to jurisdiction. That says, okay, if we dismiss these claims, does the Court still have jurisdiction to be able to hear the counterclaims? Or is the Court going to be left in a position where they don't have the power anymore? They can't possibly hear these counterclaims. That's what Rule 41 addresses with by independently adjudicated. Now, we would submit, Your Honor, that of course these claims could be independently adjudicated. That is not an issue. We would submit that Mr. Hutchison was free to dismiss under Rule 41. He was free to dismiss his claims without prejudice. What without prejudice means is that there was no adjudication on the merits at that time. However, once he did that, then Rule 13 kicks in. And Rule 13 kicks in as applied to our counterclaims in the state court action. So our state court counterclaims were in the driver's seat at that point. And Rule 13 then applied to that and said, okay, now that we have your counterclaims as the operative claims here, is there a pleading out there where we would say someone has to bring a compulsory counterclaim to this? And yes, Hutchison had his answer to our counterclaims on the docket. And he was required to amend that under Rule 13F to then reassert his compulsory counterclaims. So that's how this should have gone. He was free to dismiss, but he had to live with the consequences of his dismissal. So you're saying he was free to dismiss his claims, but he should have brought the same claims. He could dismiss those claims in state court, but he should have brought the same claims as counterclaims, mandatory compulsory counterclaims to your counterclaims, now the claims. It gets a little confusing. I understand. Okay, but what's our standard of review? Because five years have passed. There's been all this litigation. And so what you're asking us for is to undo five years of litigation and a jury verdict on the ground that these counterclaims should have been or the claims should have been made counterclaims and the lawsuit in federal court never should have been filed. Exactly. This case should have been over five years ago on summary judgment. We don't even need to look to the evidence or the trial transcripts or anything. We can look just at the complaint that was filed in federal court and then our counterclaims that were filed in state court. And the district court, when it walked through its analysis, it got this wrong. And it ended up resulting in exactly what Rettig and exactly what 13A is trying to prevent, which is subsequent litigation that readdresses issues, that readdresses everything that already should have been addressed in the first cause of action. This entire breakup was supposed to be litigated. And so our review is just de novo. Did the judge apply the proper Ohio Rule 13A standard, yes, no? If we say no, he didn't, then boom, it's over. I would submit this is a matter of law that was addressed on summary judgment. And with that respect, yes, it is a de novo review. There are other issues, I think, that we brought up and that the opposing side has brought up that are subject to abuse of discretion. But this is purely a matter of law. It's purely the federal court looking to Ohio's Rule 13A and saying, look, was this applied properly? Was race judicata involved in this? Sorry? Race judicata? Yes. Ohio's Rule 13A and race judicata are kind of combined together. And that's how Reddick speaks of this. It's that Ohio's race judicata law basically embodies the principles in Rule 13. So they're kind of connected, but race judicata also embraces other more typical race judicata-type claims as well. And the Ohio courts have explained all this? I think we don't need to look any further than Reddick, Your Honor. We can look at other cases, but I think Reddick makes clear that, look, Rule 13 is part of the body of race judicata law in Ohio, and the effects that bringing subsequent claims that should have been brought in a prior action, that ends up getting litigated to a judgment. And just to be clear, Your Honor, is that a consent judgment in Ohio is just as good as it being litigated on the merits. It's subject to same race judicata principles as if it had been fully litigated on the merits. Does that answer your question? I'm sorry. But we do need to look at some Ohio cases to figure out how that standard cashes out, right? And so I'm wondering, on your theory that the district judge didn't apply the right test, the right test in Ohio is the logically related test, I believe. And so can you explain to me with some level of detail, since we have a consent judgment in Ohio, so it's a little hard for me to understand exactly why these claims are logically related. And I feel like the briefing was a little bit at a kind of high level of generality, and if you can bring it down a little bit so I can understand. I'm happy to do that, Your Honor. I think how they're related is that Reddick and other case laws say, look, when this business relationship is breaking up, everybody needs to get their claims out on the table, and we've got to figure out how this gets distributed. Everybody's cashing out of this business arrangement. We've got to see, okay, who owns what, who owes what amount of money, who put in what amount of money. And when we look at specific, Your Honor, I think your question was, if we look specifically to even just the second cause of action, which is paragraph 31 of the complaint, where Hutchison asked for an accounting. He asked for basically for the court to say, look, let's figure out who owed what. Let's figure out how much money was put in and how much money needs to come out. And that is the exact flip side, Your Honor, of our counterclaim for misappropriation, which is asking, okay, money was put into this, but Hutchison, you took some money out. We need to figure out how much money you took out because some of that is owed to me. So those two claims are exactly the mere opposites of one another. They need to be litigated together because they have these common issues of, okay, what money went in, what money at different times came out, what assets came out. We need to figure out, okay, how should this actually be dissolved, this business arrangement between us, and these issues be finalized. And do we apply 13A claim by claim so that some of the – we don't look at it as a whole package, claim by claim. So I understand your misappropriation claim. Are there other claims that you have a reason to say the claims filed in federal court should have been in state court? So I think the misappropriation claim is certainly the strongest because that goes to JPSH, the LLC, and it's exactly what's going on with a breach of fiduciary duty, the accounting claim, and the fraudulent misrepresentation claim. However, the $27,000 personal loan, this was brought originally as a counterclaim, as a personal loan in the counterclaim. However, once this gets relitigated, it turns out that this was a loan that went from Mr. Parent to JPSH, and then Hutchison took that money out and then used it for his own purposes. And then he used that money to then buy – or, sorry, excuse me, pay off a loan on an Ohio property that he had purchased. However, he doesn't sell that property then until the summer of 2008, which is when all this comes to a head. And I want to point your honors to just – I don't think this is necessary for your honors to reach a conclusion, but there are instances in the record in the trial transcript of 5906 and 5986, as well as 5903, which cites Trial Exhibit 190, which is found at 5250, where it's clear that in the summer of 2008, this all comes to a head. Hutchison's able to sell this property in Ohio, and supposedly he's able to pay back this $27,000. However, that becomes his incentive to then execute the notes and mortgages. He admits that. And then that's why – Parent says, look, hold off on paying back that $27,000. Let's execute these notes and mortgages. That's how they get related together down the ground. So it turns out that this counterclaim for $27,000, it turns out that was actually interacting with JPSH once it got relitigated out. And there's one other instance where I think, to kind of go show the harm that really happened here when this gets relitigated, is at 5933 through 5934, which touches on the misappropriation claim, where we bring this up at trial and we say, wait, you know, you misappropriated funds from JPSH, correct? And Hutchison denies it, even though there's a consent judgment sitting there that's been sitting there for five years. He denies it. And then he goes on to say, you know, I had to sign that to get it from state court to federal court. So here we have a plaintiff, an Ohio plaintiff – sorry, excuse me, my time is up. I just finished my last thought. We have an Ohio plaintiff bringing a case in Ohio, litigating it for two and a half years, and then admitting that on the eve of trial, he's just going to dismiss and file in federal court. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. My name is Rick Kerger. I'm here on behalf of Scott Hutchison, and it's a particular honor to be in front of Judge Keith. The last time I was in this courtroom, every seat was filled, and I felt like a Christian in the early days when they were surrounded by lions. I was arguing on behalf of my client who was on death row. The point I want to make is the decision's impact on Scott Hutchison is certainly less than life, but it is of great importance to him. They make much of the Rettig case. In fact, if you read Rettig, I don't think it applies at all. In Regg, significantly, the defendant opposed the motion to dismiss without prejudice, filed his opposition 17 days after the motion to dismiss was filed, or without prejudice. The court in footnote one says, this case does not present the issue as to whether a defendant has stopped from asserting Rule 13a as a bar to plaintiff's claim where in earlier action the defendant had consented to a dismissal without prejudice. That puzzled me because the word consent doesn't appear in any 13, 41, any of the rules. So what would it mean? I think in the context of the facts of Rettig, it means you didn't object at the time. But wait, why would, you had a right to dismiss your claims if you wanted to dismiss your claims. What would they object to? They would say, you don't have a lawful right to dismiss your claims? Of course you do. We've raised much of the claims here. If you do, then you're barred from litigating against us. Well, but that claim doesn't arise until you get them to federal court. So if you dismiss your claims in state court, you have a right to do that. There's no, I don't know what objection they could make. It's unlawful for you to dismiss your claims. That can't be right. The problem arises when you come and file your claim in federal court, at which case, at which time they would have a state court harm, I guess, if you want to call it that. And the significance here is the day after the case was dismissed in state court, it was refiled in the federal court. And that was pending for two months before the consent and judgment was entered in the state court. So it was no surprise to them that those claims were coming back up. And I would suggest to you, based on what the Supreme Court said in Rettig, they could have objected to the dismissal without prejudice, Your Honor. Do you have any case in which, any Ohio case, in which the Ohio courts have said, not here there was no objection, but, you know, in a footnote, but in a case where they've said, oh, Rule 13a doesn't apply because there was no objection to the following? No, I do not. That issue has not come up, apparently. But if we go back, let's assume Rettig does apply. Judge Helmick, when he reached his decision, noted that, look, this was a loan between John Parent, directed to Scott Hutchison, whether it was to JPSH or Scott, it was to Scott. And the reason was that Scott had claimed a trial. He had a business underway before he got involved in the joint venture. And with his time spent buying properties, going to auctions, his business in Ohio had no income. He needed to pay his bills. And he took these loans not to pay JPSH bills, to pay his bills, the bills he couldn't pay because he was occupied with JPSH. The money came from John Parent to Scott Hutchison. It's a freestanding claim, which has nothing to do with the principal action. It's $127,000 that you're talking about? It's $127,000. $127,000. Yeah. I have it written down wrong. And as they said in Rettig, if you assume Rettig applies, it's a compulsory counterclaim is one which is logically related, where separate trials on each would involve a substantial duplication of effort and time by the parties and the courts. And Judge Helmick found that was not the case here. Now, at that point, Judge Helmick had been intimately involved in the proceedings of the case for three years. He knew what the case was about. And he said, no, this is just not. There's no substantial duplication of effort. So we can carve this case, carve this claim out, and still have Scott's continue. Is that true with respect to both claims? I understand that you're making the argument with respect to the $127,000 personal loan. But what about the misappropriation claim? Aren't those more logical? Well, one, that was never fleshed out. The only discussion in the state court was of the loans. But importantly – But there has to be – I mean, are you saying that the claim wasn't presented to the district court with respect to both claims? It was only presented with respect to – None of those claims were presented to the federal court. They were presented to the state court. And there was one for misappropriation of funds. That's all it said. And in the consent judgment, all it said is misappropriation of funds. The money involved, $127,000 versus $153,000, there wasn't much there. But importantly – But you dismissed all your counterclaims and refiled them in federal court. Yes. So we have to figure out whether all of your counterclaims are logically related under the Ohio test to the claims that still existed in state court. And, Your Honor, I would suggest they had no relation at all. They dealt with Scott – they dealt with John Parent taking advantage of Scott. What he did was he cobbled up mortgages that he put on the properties owned by JPSH claiming millions and millions of dollars, which he never supported. At trial, he simply couldn't support those sums because he didn't pay them. He did it so he could put mortgages on each of the properties. Then he took custody of the books and records of the companies. I'll take it from this point. Puts the mortgages on, gets the book and record, including the checkbook, and then doesn't pay a dime on any of the mortgages. And then forecloses without notice on Scott and takes his interest and the equity out of those two properties. Right, so I understand that claim, but what I'm interested in is how is that claim unrelated to the claims that went forward in state court? It's unrelated because there's no substantial relationship between the counterclaims that were asserted in the state court and our claim here. That was what Judge Helmick found. Right, but the argument that appellants make is that Judge Helmick used the wrong test. He said, can these claims be independently adjudicated? And he didn't rely on the logical relationship test. It didn't grow out of the same transaction or occurrence. So if you think he applied the right test, I guess I'm interested in knowing why that's true and how the claims relate or don't relate, I guess. The loans, which are 80% of the judgment, went from John Parent to Scott Hutchison, independent. The one check was made on JPSH. Everybody knew it was going to Scott. That was the testimony at trial, was to pay his bills. Significantly, Your Honor, at trial, there was never a point made about race judicata on any issue litigated in the trial or collateral estoppel. There was no mention, for example. This is in the federal court. I'm sorry, in the federal court. No mention of race judicata. No mention that any issue being adjudicated in the federal court trial had already been resolved or was barred because of collateral estoppel. Never came up, which I think shows how unrelated the cases were. There was no claim, for example, that Scott Hutchison has been determined to have misappropriated funds. That never was presented. No claim was made during the trial. Right. So we're not saying that any issue was, I mean, their argument is that any issue was precluded or any claim was precluded in the sense of it had already been fully and fairly litigated in the court below. It's a slightly different doctrine that it should have been joined with the other issues below and that the dismissal and moving them to federal court violates that sort of mandatory joinder is what we would call it in criminal procedure. And, Your Honor, I suggest that Judge Helmick applied the right test in finding there was no substantial relationship between the counterclaim and our claims in the federal court. And that's required to get to Reddick, even assuming that Reddick applied. I think Reddick's saying basically if you are aware it's being dismissed and maybe refiled, you should object. Because I don't know what consent means. There's nothing under Rule 13 or Rule 41 that says the party has to consent to it. But the court said if there is consent, then as part, I suggest to you the only way you can come to consent is a failure to object. That's why the court in Reddick noted the fact that the defendant there had objected to the dismissal without prejudice. I still come back to I don't know what an objection would look like. It's not an objection that the trial court could rule on against you. So you say, I'd like to voluntarily dismiss my claims. And then they did what you would like them to do. They say, I object. And they would say, what are your legal grounds for objection? And the trial court would say, there's nothing for me to rule on. Let me try. I can't grant your motion. I think, one, he could have because the judgment wasn't final in the state court. It didn't become final until April 12th, I believe. And our case was refiled on February 12th. He could have said, Your Honor, this should be with prejudice, this dismissal. Because our counterclaims are going to be affected by that case being tried, the one that's pending in federal court. And you need to prevent that by stepping in now. That's the objection that could have been made, was not made, and would have avoided us having this discussion at this point. But I still come back to, even if you accept that that applies, that the judge applied the right test under Ohio law of saying there's no judicial economy. One of the big parts about it is we don't want to have the court trying the same case twice. It didn't. And it wouldn't. And the reason I raise the race to the counter-objection of collateral estopel at trial is if they're so related, at some point, certainly, some issue would have come up in the several-day trial in federal court that somebody would say, Hey, that's been decided already. Or their claims against Mr. Parent are nothing like what happened to Mr. Hutchison, who's been found by the court to have misappropriated funds on his own. That's a judicial finding you jurors don't have to worry about. It was never said because it wasn't an issue that got resolved. There are other issues before the court they would hope you would have time to get to, one of which is the extent to which the submission for indicative of ruling, whether Judge Helmick stayed within the ambit of what you sent down to him. Right. So let's talk about that. That's on the prejudgment interest argument, right? No. It goes with the – I just made my mind go blank. It goes with whether or not the Indiana cap, the split recovery, should apply or not. Right. That was what was sent back. Right. But in that case, what was sent back is should the Indiana cap apply or not. And your argument was, no, no, Indiana law doesn't apply. Ohio law applies. And so he accepted your argument and said, oh, you're right, Ohio law applies. That didn't work out so well for you, but I don't know how that's – I think what we're suggesting is Indiana law would apply to the substantive violations of the fiduciary duty he owed. But when you come to the split recovery in Indiana, that's something that comes in after the judgment. Judgment is final before it even arises. That is entirely procedural. And in a federal court in Ohio, that procedural rule stops at the border and doesn't bleed into telling a clerk in a district court in Ohio where you send funds that you don't have because the parties are going to exchange them back and forth. And we said that's what should have come out of this, not them taking the Ohio cap and asserting this after the fact. The Indiana ruling – The Ohio cap is substantive in federal court, right? That's Gasparini. The Ohio cap is substantive. Yes, if the Ohio cap applied. Right. But if we've got an Ohio case where the federal court's applying Ohio law, the jury has rendered a judgment under Ohio law, the cap is substantive. There's no argument that the cap's procedural. That'd be foreclosed by Gasparini, I think. It, I think, is a federal court in Ohio, when the judgment comes down, follows the fed rule. There's nothing on the fed rule that applies a cap or division of the funds. Well, as to the division, yes, you're right, there's no federal cap on damages. But Ohio has a cap on damages. Yes. Gasparini – Gasparini, I think that's the name of the case – Right. from the U.S. Supreme Court says, yeah, we think these damages caps are substantive law, so I don't know why it doesn't just follow hand-in-mouth, foot-in-hand, hand-in-hand, something like that. Stan, we said in the brief, it's a matter we think of procedural rule. Erie v. Tompkins says it doesn't have to follow that. Thank you very much. Appreciate it. Thank you, Judge. Your Honors, I'd like to make just a couple of points, if I may, in rebuttal. The first one goes to this issue of consent and objection. And Judge Larson, I think you're exactly right, what would objection look like. But in this case, we're not talking about a 41A1B dismissal, which would require a stipulation signed by all the parties where we're agreeing to dismissal. We're not talking about that. This is a 41A1A dismissal, which is an action purely on the part of the plaintiff saying, hey, let me get out of here. And as I said in my opening, that was totally fine. He was allowed to do that, and that was without prejudice. It's just the fact that he was able to freely dismiss, but had to actually live with the consequences under Rule 13. Another point, just to clarify, the $100,000 and the $27,000, those are separate. It's not $127,000. They're two different things in 2006-2007. Thank you. I don't have a citation in the record off the top of my head, but if the Court looks to our summary judgment exhibits, it'll lay that out. Also, in terms of the independent adjudication, I think the Court was asking, well, what would an objection look like? And I think this comes into the District Court's problem of relying on independent adjudication. An objection would be required in an instance where the counterclaims are left with no place to go, or they can't be litigated in that court. There are some examples that come up in the case law. For instance, if, let's say, the counterclaims fell below the amount in controversy, or let's say there was an issue of sovereign immunity, where the initial party bringing the claims had sovereign immunity, but then they brought it, and then a counterclaim was then brought against it. If the initial party then dropped, they could say, wait a second, you can't bring that counterclaim against me anymore because I have sovereign immunity. And then that's when the objecting party would have to say, no, no, you need to stay in here, because otherwise I can't bring my claims against you. With the Court's indulgence, this is not in our briefing, but that's an example from Wyandotte Nation v. City of Kansas, 200 F. Suff Second, 1279, out of the District of Kansas. That kind of goes to this independent adjudication language and what that really means. That means that if you can't have jurisdiction in that court anymore because your opposing party's claims are gone, then, yeah, you need to say something and get those in. But that is absolutely not this situation. I also want to talk about the duplication of effort. I think, before I get to that, one moment here, I think opposing counsel also mentioned that this issue of race judicata was raised in our answer and summary judgment, not brought back up. I think the Cottle case that we cited says, look, if this was raised before the final jury verdict and the final judgment, and you're raising it on appeal, that's okay. I'll point the Court to the Cottle case for that support. Finally, the duplication of effort that Redick warns against mentions the exact same witnesses and the exact same facts are going to be at issue in these counterclaims and in the claims that are actually litigated. The only problem is that we didn't get to actually litigate and flesh out those facts because they had the consent judgment where they wiped it all away. I think one final point, I'd like to direct the Court to two things in Redick. One, and I just want to make sure I get this quote right, Your Honor, where they say, claims and counterclaims are offshoots of the same basic controversy where they seek an accounting of the various rights, obligations, and liabilities springing from the business arrangement. That is exactly the situation we have here. And I think we need to look no further than Redick itself where the Court said, okay, we have a claim for money on a settlement agreement, we have a claim for inventory that's owed, and we have a claim for telephone bills that are owed. These all are kind of relating to this business relationship falling apart, so they all need to be brought together. And that, Your Honors, is exactly the same situation as we have here. Thank you, Your Honors. Oh, I'm sorry. Judge Keith, I forgot to ask if you had any questions. No, no, no. No, no, no. All right, otherwise I'd call counsel back up here for you. All right, thank you very much for your arguments. The case is submitted. If you'd like to call the next case.